ALAN RUSK, Alshar Investments, Inc.,
Rabat, L.L.C. and Manzana, L.L.C.,
Plaintiffs-Appellants,†

v.

CITY OF MILWAUKEE, a municipal corporation, and
Department of Neighborhood Services,
Defendants-Respondents,

MILWAUKEE DISTRICT COUNCIL 48,
AFSCME, AFL-CIO, Intervenor-Respondent.

Court of Appeals

*No. 2005AP2630. Submitted on briefs October 3, 2006.
—Decided December 19, 2006.*

2007 WI App 7

(Also reported in 727 N.W.2d 358.)

† Petition to review filed.

407

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John M. Bruce* of *Schober, Schober & Mitchell*, New Berlin.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Rudolph M. Konrad*, deputy city attorney.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Mark A. Sweet* and *Gene A. Holt* of Law Offices of *Mark A. Sweet*, LLC, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Alan Rusk, Alshar Investments, Inc., Rabat, L.L.C. and Manzana, L.L.C. (hereinafter "appellants") appeal from a judgment entered against them in a declaratory judgment action.

Appellants claim that the trial court erred in denying their declaratory judgment motion on the basis that the City of Milwaukee's building code reinspection fee ordinance is lawful. Specifically, appellants contend that the ordinance is illegal because the reinspection fees imposed by the ordinance are not valid "special charges," the fees do not provide a service to those charged such fees, making the fees a "tax," and the purpose of the ordinance is punitive rather than regulatory. Because the trial court did not err in denying appellants' motion for declaratory judgment, we affirm.

## BACKGROUND

¶ 2. Appellants are property owners in the City of Milwaukee. After their property fell below Milwaukee building code standards during a free initial inspection, they were given time to correct the irregularities. After subsequent reinspections found that the properties were not in compliance, special charges were levied to compensate for the costs of the reinspections under MILWAUKEE CODE OF ORDINANCES § 200–33–48 (2001) ("MCO"). MCO § 200–33–48 states:

> REINSPECTION FEE. To compensate for inspectional and administrative costs, a fee of $50 may be charged for any reinspection to determine compliance with an order to correct conditions of provisions of the Milwaukee code under the jurisdiction of the department of neighborhood services or assigned to the department, except no fee shall be charged for the reinspection when compliance is recorded. A fee of $75 may be charged for a second reinspection, a fee of $150 for a third reinspection and a fee of $300 for each subsequent reinspection. Reinspection fees shall be charged against the real estate upon which the reinspections were made, shall be a lien upon the real estate and shall be assessed and collected as a special charge.

¶ 3. After several of the original plaintiffs were charged fees under this ordinance, they brought this suit against the City. Appellants argued that the use of these escalating reinspection fees was illegal and unenforceable on two grounds, the charges: (1) are invalid regulatory fees, and (2) are not a valid "special charge" under Wis. Stat. § 66.0627, because they do not provide a benefit to the property owner. On these bases, the appellants filed a declaratory judgment against the City. Subsequently, cross-motions for summary judgment were filed. Three questions were presented by the motions: (1) does the City have the authority to enact MCO § 200–33–48; (2) is the aforementioned ordinance an unauthorized revenue generating tax; and (3) does the City have statutory authority to assess unpaid reinspection fees against the real property inspected as a special charge pursuant to § 66.0627?

¶ 4. The trial court held that the City has the legal· authority to enact the ordinance and that the unpaid reinspection fees could be assessed against the inspected properties as special charges under Wis. Stat. § 66.0627. The court, however, concluded that the question of whether the reinspection fees constituted an unlawful tax or a valid regulatory fee presented a question of fact, which needed to be resolved by a trial.

¶ 5. The parties presented the factual issue to the court in a bench trial. The City presented evidence in support of its position that the purpose of the ordinance was regulatory—in that it was intended to encourage correction of violations rather than to raise revenue. The City argued that its position was supported by the fact that when building inspection costs were compared to the revenue generated by the reinspection fees, the costs exceeded the revenue. The City, relying on *State v. Jackman*, 60 Wis. 2d 700, 211 N.W.2d 480 (1973), con-

tended that in comparing costs to revenue, it is necessary to compare the *total costs* to the *total revenue.* The appellants advocated for a different costs versus revenue assessment. They argued that the court should compare the amount of the fee charged for individual reinspections with the costs of those reinspections. Appellants submitted evidence that in engaging in this cost analysis, the fee would exceed the cost in many instances.

¶ 6.   At the conclusion of the trial, the court found that the City's primary purpose in adopting MCO § 200–33–48, was regulatory because the City's objective was to motivate property owners to bring their properties into compliance with the building code. The trial court also found that the costs of the reinspection program, compared to revenue generated, were about equal.[1] Accordingly, the trial court determined that because the primary purpose of the ordinance was regulatory, the reinspection fees do not constitute an unlawful tax as long as there is some reasonable relationship between the fees and expenses. The court went on to find that there is a reasonable relationship between the reinspection fees and the expenses.[2] The

---

[1] In conducting the comparison, the trial court rejected the appellants' suggested calculation formula as illogical. The appellants wanted the costs of the reinspections compared to the revenue generated by reinspection fees, excluding from the calculation the cost of the initial inspection (for which no fee is charged) and the cost of all reinspections where the violation was corrected (for which no fee is charged). The court found that this approach was illogical because "it's impossible to divorce the reinspection from the initial inspection or from the compliance inspection because all three of these inspections go hand-in-hand as part of a continuum of efforts to get property owners to correct building code violations."

[2] We note that the trial court concluded that even under the appellants "illogical" approach, there was a reasonable relationship between costs and fees.

trial court explained that the fees in the ordinance escalate for a valid reason: the exercise of the City's police powers to encourage property owners to bring their buildings into compliance with the building code.

¶ 7. Based on the foregoing, the trial court granted the City's motion for summary judgment and dismissed the appellants' complaint. The appellants now appeal.

## DISCUSSION

■

. ¶ 8. This case arises from a grant of summary judgment. We review summary judgment decisions independently, although we utilize the same methodology as the trial court. *Fazio v. DETF*, 2005 WI App 87, ¶ 8, 280 Wis. 2d 837, 696 N.W.2d 563, *aff'd*, 2006 WI 7, 287 Wis. 2d 106, 708 N.W.2d 326. We will affirm a grant of summary judgment if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

*A. The reinspection fees are valid regulatory fees.*

■

¶ 9. Appellants contend that the reinspection fees are not valid regulatory fees. We disagree. It is well within the police power granted to the City of Milwaukee to enforce measures aimed at protecting the basic needs of the public. " 'The police power of the state is the inherent power of the government to promote the general welfare. It covers all matters having a reasonable relation to the protection of the public health, safety or welfare.' " *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989) (citation omitted). The

413

police power is not unfettered, but will be evaluated upon " 'whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment . . . .' " *Messner v. Briggs & Stratton Corp.*, 120 Wis. 2d 127, 135, 353 N.W.2d 363 (Ct. App. 1984) (citation omitted). We agree with the trial court's assessment on this point. There clearly is a reasonable and rational relationship to validate the use of the police power in this case. The ordinance creates an economic incentive to induce compliance with the law, which is a proper exercise of police power. The escalating fees bear a reasonable relationship to the purpose of the ordinance, which is encouraging compliance.

¶ 10. Despite the reasonable relationship, appellants claim that this ordinance is still invalid as its purpose is to generate revenue, not to regulate. Again, we disagree. At the original trial in this matter, it was conceded that whether the ordinance at issue was a tax or a fee would depend, to some large degree, on the court's interpretation of the financial data. Appellants contended that the court should have examined whether any individual reinspection was more expensive than the cost of conducting that inspection. If the court concluded that the fee was higher than the cost, then the reinspections would be deemed a revenue generating measure, and thus an illegal tax. However, the City argues that in order to truly understand the financial impact of the reinspection program, one must look to the costs of the program as a whole, and not simply individual inspections.

¶ 11. The City admits that every inspection may not cost as much as the fee levied. However, the City argues that the proper measure is whether the costs of the whole program are not reasonably related to the fees generated under such program. The City argues

that under *Jackman*, the "costs" of the reinspections should include the entire program, even the free inspections. In *Jackman*, the Wisconsin Supreme Court validated the use of fees in association with boat licensing. The appellants in *Jackman* argued that the boat license and numbering fees were an illegal tax, to which the court responded: "This court has made a distinction between taxes and fees. A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation and whatever fee is provided is to cover the cost and the expense of supervision or regulation." *Id.*, 60 Wis. 2d at 707. *Jackman* also measured the costs of the program not by individual licensing costs, but by comparing the total cost of the program to the money generated over the course of five years. *Id.* at 710.

¶ 12.  We conclude that the *Jackman* approach used by the City was the correct way to evaluate these fees. During the trial, financial data was presented by both sides arguing for differing interpretations of the exact costs and gains involved. Both sides estimated that the total amount of money generated by this ordinance for the City is about $2,000,000. Accepting the City's numbers regarding the costs of the residential reinspection program alone, the costs still exceed the revenues by a small percentage. Also, these figures prepared by the City do not take into account other related costs of the program, but focus primarily on the labor time involved.

¶ 13.  The ordinance, in practical effect, operates as follows. The first inspection fee is waived. Any subsequent reinspections follow an escalating scale, starting at $50 and maxing out at $300 after multiple reinspections. If, at any time, the reinspection finds no building violations, the fee for that inspection will be

waived. Any property owner who fails the first inspection, but then corrects the problem before the second inspection, will have no fees whatsoever.

¶ 14. We agree with the trial court that it is impossible to separate out the initial free inspections and the no-charge compliance reinspections from the analysis. It is necessary to include the entire continuum of the process in order to accurately assess costs versus revenue.

¶ 15. Based on the foregoing, we conclude that the reinspection fee ordinance was enacted for a regulatory purpose, not as a tax. The facts of this case indicate that the fees imposed are intended to regulate, not generate revenue. Although revenues from this program have increased since the enactment of the escalating fees, they are still outweighed by the costs, even when using a fairly conservative estimate of those costs. Because this is not a revenue generating measure, it is a valid exercise of the City's police power to regulate, not an illegal tax.

B. *The reinspection fees are a valid special charge under* WIS. STAT. *§ 66.0627.*

■

¶ 16. Appellants also contend that the reinspection fee imposed by the Milwaukee City Ordinance is not in compliance with WIS. STAT. § 66.0627. This statute governs the imposition of special charges by the City, providing in pertinent part:

> (1) In this section, "service" includes snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, recycling, storm water management, including construction of storm water manage-

ment facilities, tree care, removal and disposition of dead animals under s. 60.23 (20), soil conservation work under s. 92.115, and snow removal under s. 86.105.

(2) Except as provided in sub. (5), the governing body of a city, village or town may impose a special charge against real property for current services rendered by allocating all or part of the cost of the service to the property served. The authority under this section is in addition to any other method provided by law.

Sec. 66.0627. Appellants make two arguments—first, that reinspections are not included in the enumerated list of services and, second, that the reinspections do not provide a service to the property involved. Consequently, the appellants contend that the reinspection ordinance violates this statute. We are not persuaded.

¶ 17. WISCONSIN STAT. § 66.0627 has been broadly interpreted. The examples given in the statute are not meant to limit its application in any way, but merely to highlight possible uses. The previous version of the "special charges" statute, WIS. STAT § 66.60(16) (1999–2000), authorized several other non-enumerated fees that fell under this banner. In *Grace Episcopal Church v. City of Madison*, 129 Wis. 2d 331, 385 N.W.2d 200 (Ct. App. 1986), the city levied a special charge upon a church for maintenance of its concourse area. In *Laskaris v. City of Wisconsin Dells, Inc.*, 131 Wis. 2d 525, 389 N.W.2d 67 (Ct. App. 1986), the city was authorized to levy a special charge upon a property to recover on delinquent electric bills owed to the municipality. Although the statute gives some examples of its use, § 66.0627 covers a great range of possible service charges. Thus, appellants' first contention that reinspection is not specifically listed within the statute and therefore not authorized, is without merit.

417

¶ 18.   Next, we emphasize that the special charge need only provide a service, not a benefit, to the property owner. WISCONSIN STAT. § 74.01(4) provides that a special charge is "a charge against real property to compensate for all or part of the costs to a public body of providing services to the property." Appellants cite *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, 264 Wis. 2d 318, 667 N.W.2d 14, in support of their contention that the fees involved in the instant case are unlawful. We reject this contention. In *Bristol*, we held that the town could not charge legal fees relating to the defense of special assessments for gravel removal. *Id.*, ¶¶ 4–5, 24. The *Bristol* case involved a special *assessment*—not a special *charge*—and therefore is inapplicable to the instant case. *Id.*, ¶ 24. Appellants fail to make the distinction between a special *assessment* and a special *charge*. Unlike a special *assessment,* a special *charge* can be levied without a showing of a special benefit to the property. Because *Bristol* involved a special *assessment* and the instant case involves a special *charge, Bristol* is distinguishable and does not control here. Also, *Bristol* dealt with a legal fees issue several factors removed from the current discussion; thus, for that reason as well, it is inapplicable.

¶ 19.   The ordinance in question here does provide an actual service to the property owner. Namely, it is in the property owner's best interest to keep the property up to the standards of the building code. By ensuring proper maintenance, the owner takes preventative measures to safeguard against future unexpected expenses. Also, this service could be interpreted as giving an indirect financial benefit by avoiding regulation violation fees. Even if a property owner has to pay a reinspection fee at some point, those costs are still much lower than those associated with actually being

fined for building code violations. This ordinance provides a service both for the property owner in question and the general public. Accordingly, we affirm the trial court's decision.

C. *The reinspection fees are not illegal, excessive and unreasonable.*

¶ 20.   Appellants also argue that the reinspection fees are illegal, excessive and unreasonable. For the reasons espoused above, we are not convinced. WISCONSIN STAT. § 66.0628(2) provides that:   "[a]ny fee that is imposed by a political subdivision shall bear a reasonable relationship to the service for which the fee is imposed." That requirement is satisfied in this case. There is ample evidence to find that there is a reasonable relationship between the reinspection fee and the service provided in this instance.

¶ 21.   Finally, appellants have failed to provide any evidence to demonstrate that the escalation of the fees was intended as a "punishment." The trial court found otherwise and there is evidence in the record to support the court's finding. The evidence demonstrates that the "primary purpose the city had in mind when it adopted the escalating reinspection fee provisions ... was to motivate property owners to bring their properties into compliance with the building code." Accordingly, we have not been presented with any evidence to conclude that the reinspection fees are illegal, excessive or unreasonable.

*By the Court.*—Judgment affirmed.