EDGERTON CONTRACTORS, INC., Plaintiff-Respondent,

v.

CITY OF WAUWATOSA, Defendant-Appellant.

Court of Appeals

*No. 2009AP1042. Submitted on briefs December 1, 2009.
—Decided February 17, 2010.*

2010 WI App 45

(Also reported in 781 N.W.2d 228.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *George M. Schimmel* and *Timothy L. Lyons* of *O'Neill, Schimmel, Quirk & Carroll, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Richard J. Lewandowski* and *Eric Meier* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. The City of Wauwatosa appeals from a summary judgment which refunded to Edgerton Contractors, Inc., nearly $39,000 of the $43,908 inspec-

tion fee Edgerton paid pursuant to the City's Consolidated Fee Schedule that was in effect at the time Edgerton obtained an erosion control permit. The City urges us to vacate the judgment and dismiss Edgerton's action because it contends: (1) the fee schedule for erosion control inspection fees was properly adopted; and (2) the fee structure imposing an inspection fee of seven dollars per one thousand square feet of disturbed land area was reasonable. We agree with the City that the fee schedule for erosion control inspection fees was properly adopted, and we therefore reverse the trial court's conclusion to the contrary. As to the reasonableness issue, we conclude that "there are genuine issues of material fact and reasonable alternative inferences that may be drawn from undisputed material facts in this case" which preclude granting summary judgment to either party. *See Village of Hobart v. Brown County*, 2005 WI 78, ¶ 20, 281 Wis. 2d 628, 698 N.W.2d 83. Therefore, we reverse the judgment and remand for further proceedings.

## BACKGROUND

¶ 2. The Milwaukee Metropolitan Sewerage District ("MMSD") solicited bids for a public works contract to construct earthworks (primarily a large detention basin) on County-owned grounds in the City of Wauwatosa, in order to abate flooding problems and increase safety along the Menomonee River. Edgerton was awarded the contract, which required that Edgerton obtain necessary permits. One permit required by WAUWATOSA MUNICIPAL CODE ("WMC") § 24.57.090 (2006)[1] was an erosion control permit, which Edgerton applied for in June 2006.

---

[1] WAUWATOSA MUNICIPAL CODE § 24.57.090 provides in relevant part:

¶ 3. Edgerton's permit application was processed consistent with the general erosion control permit process, pursuant to which an application is filed and an application fee is paid, the application is reviewed by various departments, an inspection fee is calculated based on the applicable Consolidated Fee Schedule, and the permit is issued upon payment of the inspection fee (with credit given for the application fee).[2] The 2006 Consolidated Fee Schedule applicable to erosion control permits required an application fee of $45 and an

**Permit application, erosion control plan, and permit issuance on lands other than street r.o.w . . . .**

No landowner or land user may commence a land development or land disturbing activity subject to this chapter without receiving prior approval of an erosion control plan for the site and a permit from the building regulations department. At least one landowner or land user controlling or using the site and desiring to undertake a land development or land disturbing activity subject to this chapter shall submit an application for an erosion control permit and a control plan and pay an application fee to the building inspector. By submitting an application, the applicant is authorizing the city or other agent authorized by the city to enter the site to obtain information required for the review of the erosion control plan.

WAUWATOSA MUNICIPAL CODE ch. 24.57 has not been amended since 1993. Therefore, all references to ch. 24.57 are to the current version.

[2] The Consolidated Fee Schedule covers fees for services provided by what appear to be all city departments, including Administration, Assessor, Building and Safety Division, City Clerks Office, Comptroller/Treasurers Office, Information Systems, Fire Department, Health Department, Library, Planning, Police Department, Public Works Department, Purchasing and Parks—Facilities Rental. The Consolidated Fee Schedule shows the fees charged in 2004, 2005, and 2006 and identifies when the fees were last updated. For example, under "Administration", rental fees are set for various rooms in the municipal building and were last updated at various times between 1995 and 2002.

inspection fee of seven dollars per one thousand square feet of disturbed land area.[3] Based on the one hundred and forty-four acres of land that Edgerton's project would disturb, the City charged Edgerton an inspection fee of $43,908. Edgerton protested the fee as unreasonable and excessive, paid the fee under protest and subsequently brought this declaratory judgment action against the City seeking a refund of the fee.

¶ 4. The parties engaged in discovery, which included the deposition of David M. Wheaton, Chief Building Official for the City of Wauwatosa. In his deposition, Wheaton testified about the inspection fee assessed in this case, how the inspection fee for erosion control permits that is detailed in the 2006 Consolidated Fee Schedule was established and why the Consolidated Fee Schedule was subsequently amended to establish a $5000 maximum inspection fee for erosion control permits.

¶ 5. Edgerton moved for summary judgment. First, it argued that "there was no lawful basis for the City to charge a permit fee[4] for the project" because the City's erosion control ordinance did "not include the words 'permit fee' anywhere." (Some capitalization omitted.) Edgerton reasoned that because Wis. Stat. § 62.234 (2007–08),[5] the statute that authorizes cities

---

[3] The 2006 Consolidated Fee Schedule also lists a $200 fee for each non-residential building involved in an erosion control project, but that fee was not assessed in this case.

[4] The parties use a variety of terms to describe the $43,908 fee that Edgerton was charged to secure the erosion control permit, including "inspection fee" and "permit fee." Except when quoting the parties, we will refer to the challenged fee as "the fee" or "the inspection fee."

[5] Wisconsin Stat. § 62.234 has not been amended since 2006. Therefore, for ease of reference, we refer to the 2007–08

to enact erosion control ordinances, provides in subsection (4)(c) that an ordinance enacted pursuant to § 62.234 "supersedes all provisions of an ordinance enacted" pursuant to Wis. Stat. § 62.23[6] (the more general city planning statute), then the Wauwatosa erosion control ordinance's failure to establish fees meant that the City could not charge a fee for erosion control permits. Edgerton argued: "Chapter 24.57 su-

version of that statute. All other references to the Wisconsin Statutes are likewise to the 2007–08 version unless otherwise noted.

WISCONSIN STAT. § 62.234 provides in relevant part:

**Construction site erosion control and storm water management zoning . . . .**

(2) AUTHORITY TO ENACT ORDINANCE. To effect the purposes of s. 281.33 and to promote the public health, safety and general welfare, a city may enact a zoning ordinance, that is applicable to all of its incorporated area, for construction site erosion control at sites where the construction activities do not include the construction of a building and for storm water management. This ordinance may be enacted separately from ordinances enacted under s. 62.23.

(4) APPLICABILITY OF CITY ZONING PROVISIONS. (a) Except as otherwise specified in this section, s. 62.23 applies to any ordinance or amendment to an ordinance enacted under this section.

(b) Variances and appeals regarding construction site erosion control or storm water management regulations under this section are to be determined by the board of appeals for that city. Procedures under s. 62.23 (7) (e) apply to these determinations.

(c) An ordinance enacted under this section supersedes all provisions of an ordinance enacted under s. 62.23 that relate to construction site erosion control at sites where the construction activities do not include the construction of a building or to storm water management regulation.

[6] WISCONSIN STAT. § 62.23 is the comprehensive city planning statute and contains provisions on a variety of topics, including zoning. Amendments made to § 62.23 during the pendency of this case are not relevant to this appeal, so we refer to the 2007–08 version of § 62.23 for ease of reference.

perseded all other City ordinances that may have otherwise related to construction site erosion control. In other words, construction site erosion control within the City[] . . . was exclusively governed by the express written terms of Chapter 24.57." (Emphasis omitted.)

¶ 6. In the alternative, Edgerton argued that even if the City could charge an inspection fee, the actual fee charged "was excessive and was unreasonable." Edgerton suggested that a more reasonable fee would be $5000, the amount that is now the maximum fee under the amended Consolidated Fee Schedule.

¶ 7. In response,[7] the City asserted that Edgerton's arguments were meritless and that its action should be dismissed. First, the City took issue with Edgerton's interpretation of WIS. STAT. § 62.234(4)(c), arguing that only "certain enactments pursuant to [WIS. STAT. §] 62.23" can be superseded, and that fee schedules adopted by resolution of the City's Common Council are not among them. The City explained:

> [I]f the City passed an ordinance by the authority of § 62.23 relating to construction soil erosion control or storm water management, [that ordinance would have been] displaced by [WMC] Chapter 24.57, [which was] enacted pursuant to § 62.234.
>
> . . . [B]ecause there never existed any erosion control or storm water management ordinances before Chapter 24.57 was enacted and because none of the erosion control inspection fee administrative matters were enacted pursuant to § 62.23, [§ 62.234(4)(c)] is inapplicable and irrelevant to the circumstances here.

(Emphasis omitted.)

---

[7] The City did not file a motion seeking summary judgment in its favor, but it asserts on appeal that its opposition to Edgerton's motion was "in essence . . . a cross-motion for summary judgment."

¶ 8. With respect to the reasonableness of the inspection fee, the City argued that the methodology resulting in an inspection fee of seven dollars per one thousand square feet of disturbed land area was "reasoned and fair." The City relied on Wheaton's deposition testimony in support of its argument that the fee imposed for Edgerton's "large" project "was correctly calculated pursuant to an equitable, reasoned methodology."

¶ 9. The trial court concluded that the City should have included a fee schedule in WMC ch. 24.57, the City's erosion control ordinance. Further, the trial court concluded that the inspection fee in the 2006 Consolidated Fee Schedule was unreasonable. It concluded that a reasonable fee in this particular case would have been $5000 (the amount of the current maximum inspection fee) and ordered the City to return to Edgerton its inspection fee minus $5000, plus prejudgment interest and costs. The City appeals.

## STANDARD OF REVIEW

¶ 10. On appeal, we review the grant of summary judgment *de novo,* applying the same methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is proper "only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Liebovich v. Minnesota Ins. Co.,* 2008 WI 75, ¶ 14, 310 Wis. 2d 751, 751 N.W.2d 764 (quoting Wis. Stat. § 802.08(2)). On appeal, "we examine the record to

determine whether there [are] disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." *Village of Hobart*, 281 Wis. 2d 628, ¶ 19 (citations, internal quotation marks and one set of brackets omitted). Our summary judgment analysis in this case requires statutory interpretation, which "presents a question of law that we review de novo." *See State v. Johnson*, 2009 WI 57, ¶ 22, 318 Wis. 2d 21, 767 N.W.2d 207.

## DISCUSSION

¶ 11. At issue in this appeal is whether the City can impose on Edgerton the erosion control inspection fee detailed in the 2006 Consolidated Fee Schedule and, if so, whether the fee imposed was reasonable. We examine each issue in turn.

**I. Whether WMC ch. 24.57 supersedes the erosion control inspection fee listed in the 2006 Consolidated Fee Schedule.**

■

¶ 12. The first issue presented is whether the erosion control inspection fee contained in the 2006 Consolidated Fee Schedule that the City adopted by resolution is superseded by WMC ch. 24.57, such that the failure to explicitly list the fees applicable to erosion control projects in ch. 24.57 means that the City cannot charge an inspection fee. Edgerton argues that the inspection fee is superseded by ch. 24.57, citing Wis. Stat. § 62.234(4)(c), which provides that an erosion control ordinance adopted pursuant to § 62.234 "supersedes all provisions of an ordinance enacted under s. 62.23 that relate to construction site erosion control at sites where the construction activities do not include

the construction of a building or to storm water management regulation." Edgerton explains:

> [T]he plain language construction of [§] 62.234 and its subparts is that if cities are to regulate construction site erosion control, they must do so through the ordinance adoption process. Further, once a specific erosion control ordinance is adopted, it controls over any other general ordinances which may otherwise have dealt with erosion control.
>
> . . . .
>
> The City exercised its statutory right to create an erosion ordinance . . . . [B]y doing so, it was obligated to set forth the complete mechanism governing erosion control within the four corners of the ordinance.

We are not convinced.

¶ 13. The plain language of WIS. STAT. § 62.234 contains no prohibition against imposing municipal fees for services in connection with erosion control projects, and it does not mandate that fees be listed "within the four corners of the ordinance," as Edgerton asserts. Indeed, the statute does not even mention fees.

¶ 14. Further, as to Edgerton's supersession argument, we note that WIS. STAT. § 62.234(4)(c) states only that an *ordinance* adopted under WIS. STAT. § 62.23 "that relate[s] to construction site erosion control at sites where the construction activities do not include the construction of a building or to storm water management regulation" is superseded by an *ordinance* adopted under § 62.234. It is undisputed that the 2006 Consolidated Fee Schedule, which listed the fees associated with obtaining an erosion control permit, was adopted via *resolution* and is not an *ordinance* enacted under § 62.23. Therefore, consistent with the plain

266

language of § 62.234(4)(c), the 2006 Consolidated Fee Schedule is not superseded by the City's erosion control ordinance.

¶ 15. For these reasons, we reject Edgerton's assertion, and the trial court's conclusion, that the enactment of an erosion control ordinance supersedes the City's 2006 Consolidated Fee Schedule, as well as the related assertion that the erosion control ordinance's failure to specify permit fees means the City cannot impose any fees related to erosion control permits. The next issue, then, is whether the fee imposed was reasonable.

## II. Reasonableness of the inspection fee imposed.

¶ 16. The law distinguishes between taxes and fees. "A tax is one whose primary purpose is to obtain revenue, while a license fee is one made primarily for regulation and whatever fee is provided is to cover the cost and the expense of supervision or regulation." *State v. Jackman*, 60 Wis. 2d 700, 707, 211 N.W.2d 480 (1973). When municipalities elect to impose fees for regulation purposes, such as the case here, the fees must be designed to cover the cost of regulation and must be reasonable. *See City of Milwaukee v. Milwaukee & Suburban Transp. Corp.*, 6 Wis. 2d 299, 308, 312, 94 N.W.2d 584 (1959) (passenger seat fee which city required transportation company to pay should "bear a relation to, or [be] an approximation of, the expenses suffered and the services rendered by the city directly attributable to the operation of the trackless trolley service"); *Sluggy's Lake Front Inn, Inc. v. Town of Delavan*, 125 Wis. 2d 199, 201, 372 N.W.2d 174 (Ct. App.

1985) (implicitly agreeing with litigant's assertion that "all licensing ordinances, as exercises of police power, must be reasonable").

■

¶ 17. These principles have also been addressed in WIS. STAT. § 66.0628(2), which provides that "[a]ny fee that is imposed by a political subdivision shall bear a reasonable relationship to the service for which the fee is imposed." In *Rusk v. City of Milwaukee*, 2007 WI App 7, 298 Wis. 2d 407, 727 N.W.2d 358 (Ct. App. 2006), we applied WIS. STAT. § 66.0628(2) in a case involving a challenge to the legality and reasonableness of a building code reinspection fee. *See Rusk*, 298 Wis. 2d 407, ¶ 20. We concluded that based on the record, there was "ample evidence to find that there is a reasonable relationship between the reinspection fee and the service provided." *Id.* That evidence included the fact that the amount of money generated by the reinspection fee was about two million dollars and that "the costs of the residential reinspection program alone . . . still exceed the revenues by a small percentage . . . [and the] figures prepared by the [c]ity do not take into account other related costs of the program, but focus primarily on the labor time involved." *Id.*, ¶ 12.

¶ 18. In this case, both parties relied on the deposition of Wheaton in support of their summary judgment arguments concerning the reasonableness of the inspection fee. Wheaton's testimony included the following: In the late 1990s, Wheaton was involved in recommending the adoption of a fee schedule that included an inspection fee for erosion control projects of seven dollars per one thousand square feet of disturbed land area. Wheaton said his methodology to determine the recommended inspection fee was to consider "direct and indirect costs, using a benchmark of one acre."

Wheaton said he used a one-acre benchmark "[b]ecause over 96 percent of the properties in the City of Wauwatosa are at that benchmark or slightly below." He explained that "[t]he direct costs are those costs associated with my department in the area of wages, administration, things of that nature. The indirect costs are those services that are provided to me and to the public from other departments and agencies within the City." Wheaton did not specify the dollar amount of any direct or indirect costs that were considered in setting the fee. He also indicated that he did not retain any "personal notes with regards to calculating fees."

¶ 19. When asked whether "the permit fee is intended to recover most, if not all, of the direct and indirect costs associated with the erosion control permit," Wheaton said no and explained that the intent was "[t]o recover a portion of the services provided by the City as a whole." The record provides no evidence of what those "City as a whole" services were or how, if at all, they are part of the City's erosion control program that is supported by collection of the inspection fee. Wheaton further acknowledged that he did not "have a percentage of recovery of City services that [he] took into account" when setting the erosion control inspection fee.

¶ 20. When asked whether the $43,908 fee that Edgerton was charged "was a larger dollar amount than needed to satisfy the goal of recovering services provided by the City," Wheaton said no and explained that "[t]he fees generated by the City, particularly to Building and Safety . . . offset the cost of services provided by the City as a whole." Wheaton opined that the amount charged to Edgerton was "equitable."

¶ 21. Wheaton testified that he was also involved in recommending that the inspection fee be changed in

2008, which was the first change to the inspection fee in ten years. He explained that sometime after July 2007, the city administrator and the mayor asked Wheaton "[t]o review my current fee schedule and to ascertain whether or not those fees were in keeping with the goal of recovering revenue for services provided by the City." Wheaton said he recommended the creation of a maximum inspection fee "[b]ecause the methodology that I used to determine those fees never took into consideration an extremely large acreage of disturbed land." The revised fee schedule capped the erosion control inspection fee at $5000. Wheaton said he selected that dollar amount after consulting "the Southeast Wisconsin Building Inspector's Association fee schedule." When asked, Wheaton said he could not recall anything else he "relied upon in making [his] recommendation that the $5,000 amount should be the maximum that's charged" other than "just seeing that the $5,000 was the amount set forth in that building inspector's fee schedule."

¶ 22. Based on Wheaton's testimony, both parties argue that they are entitled to summary judgment in their favor. However, we conclude that genuine issues of material fact, as well as reasonable alternative inferences that may be drawn from undisputed material facts, preclude summary judgment.

¶ 23. Wheaton testified that the fee schedule was based on the City's indirect and direct costs, but he provided no dollar figures or percentages of the costs recovered. The evidence available to determine the motion for summary judgment was a far cry from the evidence we relied upon in *Rusk* to conclude "that there is a reasonable relationship between the reinspection fee and the service provided." *See id.*, 298 Wis. 2d 407, ¶¶ 12, 20. The evidence may, or may not, establish that

the erosion control permit fees bear a reasonable relationship to the service (the erosion control program) for which they are imposed. *See* WIS. STAT. § 66.0628(2). Further, a reasonable connection may, or may not, exist between the unspecified "services provided by the City as a whole" that Wheaton said he considered in connection with the erosion control permit fees. In addition, Wheaton testified that application of the original fee schedule resulted in an equitable fee being assessed against Edgerton, but he did not explain why a $5000 maximum fee for inspections of the same property is now considered equitable.

¶ 24. In summary, the record contains conflicting assertions and opinions, and lacks the factual development needed to analyze whether the inspection fee "bear[s] a reasonable relationship to the service for which the fee is imposed." *See id.* Based on our review of the record, we conclude "that there are genuine issues of material fact and reasonable alternative inferences that may be drawn from undisputed material facts in this case." *See Village of Hobart*, 281 Wis. 2d 628, ¶ 20. Therefore, summary judgment is improper. *See id.*, ¶¶ 18–21. We reverse and remand for a determination of the reasonableness of the inspection fee.

## CONCLUSION

¶ 25. We reverse the judgment. We agree with the City that the fee schedule for erosion control inspection fees was properly established, and we therefore reverse the trial court's conclusion to the contrary. We also reverse the trial court's determination on summary judgment that the inspection fee was unreasonable, but we decline the City's invitation to dismiss Edgerton's action to recover its payment of the inspection fee. Instead, because "there are genuine issues of material

271

fact and reasonable alternative inferences that may be drawn from undisputed material facts in this case," *see id.*, ¶ 20, we remand for a determination of the reasonableness of the inspection fee.

*By the Court.*—Judgment reversed and cause remanded with directions.