NICOLET MINERALS COMPANY, Plaintiff-Respondent,

v.

TOWN OF NASHVILLE, Defendant-Appellant.†

Court of Appeals

*No. 01–1339. Submitted on briefs December 17, 2001.—Decided January 29, 2002.*

2002 WI App 50

(Also reported in 641 N.W.2d 497.)

† Petition to review denied 4-22-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William P. O'Connor, Janet L. Kelly* and *Mary Beth Peraneau* and *Wheeler, Van Sickle & Anderson, S.C.*, and *Glenn M. Stoddard* and *Garvey & Stoddard, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James L. Huston* and *Foley & Lardner* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The Town of Nashville appeals a summary judgment enforcing the local agreement between the Town and Nicolet Minerals Company regarding the development of mining operations in Nashville and determining that the Town's subsequent attempt to rescind the agreement was invalid. We conclude that summary judgment was appropriate and that the parties entered into an enforceable local agreement pursuant to WIS. STAT. § 293.41,[1] which creates an exception to the ordinary zoning procedures set forth in WIS. STAT. § 62.23(7). Accordingly, we affirm the judgment.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 2. Nicolet, formerly known as the Crandon Mining Company, seeks state and federal permits to begin mining operations in Forest County. A precondition of the state permit is that Nicolet conform to all applicable zoning ordinances. *See* WIS. STAT. § 293.49(1)(a)6. In order to satisfy local zoning regulations, Nicolet negotiated with the Town board and, in December 1996, entered into a local agreement pursuant to WIS. STAT. § 293.41.[2]

---

[2] WISCONSIN STAT. § 293.41 provides:

(1) A county, town, village, city or tribal government that requires an operator to obtain an approval or permit under a zoning or land use ordinance and a county, town, village or city in which any portion of a proposed mining site is located may, individually or in conjunction with other counties, towns, villages, cities, or tribal governments, enter into one or more agreements with an operator for the development of a mining operation.

(2) An agreement under sub. (1) shall include all of the following:

(a) A legal description of the land subject to the agreement and the names of its legal and equitable owners.

(b) The duration of the agreement.

(c) The uses permitted on the land.

(d) A description of any conditions, terms, restrictions or other requirements determined to be necessary by the county, town, village, city or tribal government for the public health, safety or welfare of its residents.

(e) A description of any obligation undertaken by the county, town, village, city or tribal government to enable the development to proceed.

(f) The applicability or nonapplicability of county, town, village, city or tribal ordinances, approvals or resolutions.

(g) A provision for the amendment of the agreement.

¶ 3. In Article 2C of the local agreement, the Town granted Nicolet the right to mine in Nashville, assuming it received the applicable state and federal permits. Article 2F of the agreement was drafted to provide for all permits and approvals required for mining under the Nashville Zoning Ordinances and all other Town laws and regulations. Also in Article 2F, the Town granted Nicolet all conditional use, planned development and other permits, and all other approvals, variances or amendments that are or may be required for mining. In exchange, in Articles 2F, 3, 4 and 5, Nicolet agreed, among other things, to make various payments to the Town, to give hiring preference to local residents and to comply with all applicable state and federal laws. The Town and Nicolet concurred in Article 2F that compliance with the agreement constituted compliance with all applicable Nashville ordinances and regulations.

(h) Other provisions deemed reasonable and necessary by the parties to the agreement.

(3) A county, town, village, city or tribal government may authorize the local impact committee appointed under s. 293.33 to negotiate an agreement under this section, but the agreement may not take effect until approved by the county, town, village, city or tribal government in accordance with sub. (4).

(4) The county, town, village, city or tribal government shall hold a public hearing on an agreement under sub. (1) before its adoption. Notice of the hearing shall be provided as a class 2 notice, under ch. 985. After the public hearing, the governing body of each county, town, village, city or tribal government which is to be a party to the agreement must approve the agreement in a public meeting of the governing body.

(5) A state agency shall assist a county, town, village, city or tribal government in enforcing those provisions of a local agreement that are within the expertise of the state agency.

839

¶ 4. Public sentiment in the Town opposed the local agreement. As a result, the incumbent members of the board were defeated in the April 1997 election. After the new board passed a resolution rescinding the agreement, Nicolet brought an action against the Town to enforce the local agreement.

¶ 5. Both Nicolet and the Town moved for summary judgment. The Town argued that the local agreement was invalid and therefore unenforceable for a numbers of reasons, including that there were procedural flaws and that the Town exceeded its police powers by enacting the agreement. The Town also contended that by entering this particular agreement, the Town exceeded the powers granted to it by WIS. STAT. § 293.41. Nicolet maintained that all procedural requirements were met, the local agreement satisfied the requirements of § 293.41 and the agreement was a proper exercise of the Town's powers under the statute.

¶ 6. The trial court deemed the local agreement valid and enforceable under WIS. STAT. § 293.41 and granted Nicolet's motion for summary judgment. The court denied the Town's summary judgment motion and declared the rescission resolution null and void. The Town now appeals.

STANDARD OF REVIEW

¶ 7. When reviewing a summary judgment, we perform the same function as the trial court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). This case involves the validity of a local agreement entered into pursuant to WIS. STAT. § 293.41. The interpretation of a statute and its application to a set of facts are questions

of law we also review de novo. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). "The purpose of statutory interpretation is to discern the intent of the legislature," and we look to the plain language of the statute to determine intent. *Id.* at 365. Only if the language of the statute renders legislative intent ambiguous do we resort to judicial construction. *Id.*

## DISCUSSION

### I. LOCAL AGREEMENT

¶ 8. The Town granted Nicolet the right to mine in Article 2C of the local agreement, contingent upon Nicolet's receipt of state and federal permits. Further, Article 2F provides that Nicolet must comply with the agreement, the mining permit and all applicable state and federal laws. The parties express in Article 2F that the agreement was drafted to provide for "all matters required for Mining under the Nashville Zoning Ordinance and all other Nashville laws and regulations. . . ." In Article 2F, the Town granted to Nicolet all conditional use, planned development and other permits, and all other approvals, variances or amendments that are or may be required for mining. Under that Article, Nicolet's compliance with the agreement constitutes compliance with all applicable Town ordinances and regulations.

¶ 9. In exchange for entering into the agreement and waiving the need to pursue individual permits and regulations at each step of the mining process, Nicolet agreed in Articles 3 and 4 to pay the Town (1) a $100,000 permitting fee, (2) past and future legal expenses incurred in negotiating the agreement, (3) $120,000 a year for five years, minus setoffs, (4) property taxes levied for Town expenses, (5) tax equalization

payments, and (6) payments under provisions of Wisconsin law intended to share taxes on mining operations with local governments affected by mining.

¶ 10. Nicolet agreed in Article 5 to give hiring preference to local residents to the extent permitted by law. Article 6 of the agreement contains a "reopener" clause that allows the Town to renegotiate terms "if it would otherwise suffer an additional substantial unmitigated negative impact" from Nicolet's change in operations. Also, either party may, under Article 6, "reopen for negotiation" specific terms if Nicolet "proposes a Substantial Modification of the Mining Plan or the Reclamation Plan."

II. WISCONSIN STAT. § 293.41

¶ 11. We begin by considering WIS. STAT. § 293.41 and then address the Town's specific arguments in light of our statutory analysis. Section 293.41(1) authorizes a local government and a mining company to enter into an agreement "for the development of a mining operation." An agreement made pursuant to § 293.41 must detail (1) the uses permitted on the land, (2) conditions, terms, restrictions or other requirements deemed necessary by the Town, (3) obligations undertaken by the Town to enable the development of the mining operation, (4) the applicability or nonapplicability of Town ordinances, approvals or resolutions, (5) the provisions for the amendment of the agreement, and (6) other provisions the parties deem reasonable and necessary. WIS. STAT. § 293.41(2). The Town may engage a committee to negotiate with the mine operator on its behalf, but an agreement under § 293.41 does not take effect until approved by the local government in accordance

842

with due process, described as notice, hearing and approval in a public meeting. WIS. STAT. § 293.41(3) and (4).

¶ 12. We consider WIS. STAT. § 293.41 to be unambiguous. The intent of the legislature is discernible from the plain language of the statute. Section 293.41 provides a specific exception to the general zoning regulations. It allows local governments to combine in a single agreement zoning and land use permits and approvals in exchange for payments from the mining companies and attention to their concerns about the mine development. We conclude that the legislature created § 293.41 so that local governments and mining companies could enter into agreements and negotiate terms once, resolving all issues so that the parties would not need to incur the time and expense of renegotiation at each step of the mining project.

¶ 13. We further conclude that the local agreement between the Town and Nicolet conformed with WIS. STAT. § 293.41 requirements and is therefore valid and enforceable. Article 2 of the agreement mirrors § 293.41(2) section by section and explains how each statutory requirement is satisfied. Article 2A sets forth the legal description of the land subject to the agreement as the Project Area, which is defined in Article 1 and shown in Exhibit A to the agreement. Article 2B states that "this agreement shall remain in effect until the end of the Reclamation Period." In Article 2C, the Town grants Nicolet the right to conduct mining operations within the project area.

¶ 14. In Article 2D, the agreement sets forth the conditions Nicolet must abide by, including payments, tax equalization, and employment practices, in addition

to required state and federal permits. Similarly, Article 2E provides that the Town's obligations are set forth in the agreement. The Town's primary obligation, described in Article 2F, is to grant Nicolet all local permits and approvals necessary for the mining operation. All permits and approvals required for mining under the Nashville Zoning Ordinances and all other Town laws and regulations are deemed applicable and granted in Article 2F. Under Article 2G, the agreement may be amended by mutual agreement or via the renegotiation provisions in Article 6. Various other articles of the agreement describe other provisions the parties deem reasonable and necessary.

III. Town's Arguments

¶ 15. The Town argues that local zoning authority is limited and circumscribed by the general zoning statutes, including Wisconsin's municipal zoning enabling statute, Wis. Stat. § 60.23(7). It contends that towns have only those powers delegated to them by statute and their zoning authority is governed by the general zoning statutes. Further, the Town maintains that the zoning approvals contained in the local agreement between the Town and Nicolet were adopted in violation of the mandatory procedures and standards in the general zoning laws.

¶ 16. Our interpretation of Wis. Stat. § 293.41 disposes of all of these arguments. We agree that towns have only the powers delegated to them, and they exercise zoning power pursuant to the general zoning statutes. *See Adamczyk v. Town of Caledonia*, 52 Wis. 2d 270, 273, 190 N.W.2d 137 (1971). Nevertheless, § 293.41 is an express delegation to towns of the power to enter into local agreements with mining

companies. Section 293.41 is also more recent and more specific than the general zoning statutes and therefore creates an exception.

¶ 17. The Town maintains that nothing supports the view that the legislature intended to relieve mine operators of the ordinary processes and standards required under Wisconsin zoning laws. Yet it is well settled "that where two *conflicting* statutes apply to the same subject, the more specific controls." *Jones v. State,* 226 Wis. 2d 565, 576, 594 N.W.2d 738 (1999). And "a more recent statute controls and exists as an exception to a general statute covering the same subject matter." *Gottsacker Real Estate Co. v. State,* 121 Wis. 2d 264, 270, 359 N.W.2d 164 (Ct. App. 1984). Consequently, we conclude that Wis. Stat. § 293.41 created an exception to the pre-existing, more general zoning laws.

¶ 18. Next, the Town argues that Wis. Stat. § 293.41 contemplates local agreements but does not permit a town to bypass or ignore procedures and standards required by general land use regulations. It claims not to contest the validity of § 293.41, but asserts that the Town board exceeded its authority when it entered into this particular local agreement. Our review of the local agreement and comparison of it to § 293.41 show that the agreement meets the statutory requirements to make it valid and enforceable. We conclude that the agreement between the Town and Nicolet does not exceed the authority granted by § 293.41.

¶ 19. Pursuant to Wis. Stat. § 293.41(2)(f), a local agreement must include a statement of the applicability and or nonapplicability of town ordinances. The Town contends that this means that a local government must

identify in the agreement "any of its ordinances which, by their terms, apply to a mining project." It maintains, "This does not constitute a grant of authority to regulate the zoning of a mining operation, independent of the established zoning procedures and standards." Here, however, Article 2F shows that the local agreement was drafted to provide for "all matters required for Mining under the Nashville Zoning Ordinance and all other Nashville laws and regulations. . . ." The Town and Nicolet identified, albeit broadly, the applicable ordinances and deemed their requirements satisfied by the provisions of the agreement. Nothing in the statute precludes this process.

¶ 20. Finally, the Town contends that legislative history confirms that WIS. STAT. § 293.41 was not intended as a substitute for mandatory zoning procedures. We do not, however, consult legislative history because the plain language of the statute is unambiguous. *Reyes*, 227 Wis. 2d at 365. We conclude that § 293.41 provides a blueprint for mining companies and towns to avoid going through discreet permit and approval processes for each part of a mining operation development. The Town and Nicolet properly followed that blueprint in drafting this local agreement.

¶ 21. Despite its contentions to the contrary, it appears that the Town's real purpose is to attack the validity of WIS. STAT. § 293.41. No useful local agreement, however, would be possible under the Town's restricted construction of § 293.41. When a town negotiates with a mining company, it has only local zoning permits and approvals to give in exchange for the mining company addressing its concerns. Sections 293.41(2)(c), (d), (f) and (h) authorize a town to approve a mine in return for concessions that address the town's

land-use concerns about the project. If towns could not bypass zoning and variance procedures as a part of the local agreement, there would be no incentives for mine developers to enter into these agreements. There would be no justification for the parties to expend time and resources to negotiate local agreements and no inducement for mining companies to make payment or other concessions to benefit a town.

IV. FUTURE REGULATION

¶ 22. The Town further alleges that entering into a local agreement sacrifices the Town's right to regulate land use in the future. We disagree. Here, the agreement permits both parties to amend or rescind the agreement as a safeguard against future improper conduct by either party. We see nothing in WIS. STAT. § 293.41 that prohibits such provisions in agreements. Moreover, pursuant to WIS. STAT. § 293.41(2)(g), local agreements must provide for the amendment of the agreement. We conclude that the local agreement is not permanent and the Town may regulate prospectively because it has, under the proper circumstances, the ability to amend or free itself from the agreement pursuant to Article 6.

¶ 23. Article 6C of the agreement gives the Town the right to modify the agreement if Nicolet changes its mining operation plans in any of six specific ways and if the change threatens "an additional substantial unmitigated negative impact. . . ." Under Article 6J, the Town's right to modify the agreement is enforceable in court if renegotiation fails. The Town also may sue Nicolet in a number of situations delineated in Article 23.

847

¶ 24. The Town contends that, as a practical matter, the procedure by which the Town can release itself from the agreement is too onerous and effectively negates its ability to regulate Nicolet's operations in the future. However, the procedure parallels that contained in the Town's zoning ordinances. The language is taken from NASHVILLE, WIS., ZONING ORDINANCES § 15.06.3(b) (1995), which allows termination of a mining permit when "actual project development is significantly different than that approved by the Town Board and would result in additional, unmitigated negative impacts. . . ." The agreement's procedure is thus no less effective nor more onerous than the Town's zoning code procedure.

¶ 25. Moreover, Articles 6G and 6H allow Nicolet to implement modifications in its operations only if state and federal regulators first approve the changes. As a result, the local agreement replaces only the local layer of regulation. State and federal regulation will continue to impact the operations of the mining project.

¶ 26. The Town board made a political decision when it agreed to the renegotiation triggers in Article 6 and the remedy provisions in Article 23. WISCONSIN STAT. § 293.41 allows towns to decide not to devote their limited resources to duplicating environmental enforcement activities that state and federal agencies are required to undertake. The legislature intended for towns and mining companies to enter into agreements resolving future issues so that, once negotiated and adopted, the company could proceed reasonably unfettered in its development of a mining operation and the Town could avoid the time and expense of negotiating and determining each future occurrence.

## V. Comparisons to Other Agreements

¶ 27. The Town devotes a significant number of pages in its brief comparing the local agreement with another agreement made by Rusk County shortly after the legislature enacted WIS. STAT. § 293.41. This comparison is irrelevant, and we therefore do not consider it. An agreement made after the passage of a statute, purporting to follow its guidelines, is not evidence of legislative intent. It is merely one example of a local agreement.

## VI. Due Process

¶ 28. Finally, the Town argues that enforcement of the local agreement deprives landowners of due process. The Town contends that the statutory procedures governing zoning must be followed in order to ensure landowners' due process rights. However, WIS. STAT. § 293.41 provides an alternate procedure for complying with local government zoning and permit regulations. Section 293.41 contains its own process, and it is undisputed that the Town complied with the WIS. STAT. § 293.41(4) notice and hearing requirements (notice, public hearing and approval in a public meeting) when it adopted the local agreement. This provided due process.

## Conclusion

¶ 29. WISCONSIN STAT. § 293.41 unambiguously authorizes local governments to make mining development agreements with towns. The agreement between the Town and Nicolet properly resolved all zoning and

permit issues between the parties. It is valid and enforceable. As a result, the Town's resolution to rescind the local agreement was invalid.

*By the Court.*—Judgment affirmed.