**2023 WI App 48**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2022AP1649

Complete Title of Case:


> **MARY LANE AREA SANITARY DISTRICT,**
> **IXONIA UTILITY DISRICT #2 AND TOWN OF IXONIA,**
>
>      **PLAINTIFFS-CO-APPELLANTS,**
>
> **VILLAGE OF LAC LA BELLE,**
>
>      **PLAINTIFF-APPELLANT,**
>
>      **V.**
>
> **CITY OF OCONOMOWOC,**
>
>      **DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | August 30, 2023 |
| Submitted on Briefs: | June 13, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Lazar, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Co-Appellant ATTORNEYS: | On behalf of the plaintiffs-co-appellants, the cause was submitted on the briefs of *Matthew Parmentier* of *Dempsey Law Firm, LLP*, Fond du Lac. |
| Appellant ATTORNEYS | |

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William S. Cole* and *Justin H. Lessner* of *Axley Brynelson, LLP*, Madison.

Respondent
ATTORNEYS:

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard L. Bolton* and *Lawrie J. Kobza* of *Boardman & Clark LLP*, Madison.

COURT OF APPEALS
DECISION
DATED AND FILED

**August 30, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1649**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV1043

IN COURT OF APPEALS

MARY LANE AREA SANITARY DISTRICT,
IXONIA UTILITY DISTRICT #2 AND TOWN OF IXONIA,

    PLAINTIFFS-CO-APPELLANTS,

VILLAGE OF LAC LA BELLE,

    PLAINTIFF-APPELLANT,

  V.

CITY OF OCONOMOWOC,

    DEFENDANT-RESPONDENT.

        APPEAL from an order of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Affirmed*.

        Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1      NEUBAUER, J. More than twenty years ago, the City of Oconomowoc entered into written intergovernmental agreements with several neighboring municipalities and affiliated sanitary districts under which the City agreed to accept, treat, and dispose of their wastewater.[1]  The agreements require the municipalities to pay certain charges for sewerage treatment and capital costs. They also include an annual "license fee."  The question in this case is whether the license fee is valid and enforceable.  The municipalities contend that the license fee violates WIS. STAT. § 66.0821(4)(a), which permits municipalities to "establish sewerage service charges" that relate to the provision of sewerage service.  They further argue that the license fee violates WIS. STAT. § 66.0628(2), which requires that fees imposed by municipalities "bear a reasonable relationship to the service for which [they are] imposed."  They also argue that the City lacks any other legal authority to charge the fees.  The circuit court rejected these arguments and granted summary judgment to the City, concluding that the undisputed facts established that the license fee is valid and enforceable consideration for the extension of the service to these extraterritorial entities, which the City was not required to do.  We affirm.

---

[1] We refer to the City of Oconomowoc in this opinion as either "the City" or "Oconomowoc."  Each of the agreements was entered into as an intergovernmental agreement under WIS. STAT. § 66.30, which was later renumbered as WIS. STAT. § 66.0301 (2021-22).  Thus, we refer to the municipalities and sanitary districts collectively as the "municipalities," unless otherwise noted.  *See* § 66.0301(1)(a) (defining municipality to include "any city, village, town … sanitary district, [and] sewer utility district").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## BACKGROUND

### I.     The Wastewater Treatment Agreements

¶2     Oconomowoc owns and operates a wastewater treatment facility.  The municipalities and sanitary districts that brought this action—the Mary Lane Area Sanitary District, the Town of Ixonia and Ixonia Utility District #2, and the Village of Lac La Belle—each own and operate wastewater collection systems but do not have their own treatment facilities.   The municipalities entered into intergovernmental agreements with Oconomowoc in the late 1980s under which their wastewater would be transported to, and treated at, the City's facility.  The City and the municipalities entered into amended versions of these agreements in the late 1990s.

¶3     The amended agreements establish the terms and conditions under which Oconomowoc agreed to accept and treat the municipalities' wastewater.  For example, each amended agreement identifies a service area from which the municipality will collect wastewater, requires the municipality to measure the volume of wastewater it transmits to the City, and obligates the municipality to comply with the City's sewer use ordinance.  The amended agreements also require the municipalities to pay monthly charges for wastewater treatment, a share of capital costs associated with the City's wastewater treatment infrastructure, and certain other expenses.

¶4     In addition, each amended agreement requires the municipality to pay an annual "license fee" to the City.  The language in the license fee provisions is substantially the same across the agreements. For example, the provision in the amended agreement between the City and the Mary Lane Area Sanitary District reads as follows:

J.    LICENSE FEES

(1)    In recognition of the receipt of sanitary sewerage service to remedy environmental problems without requiring annexation to the City, the District shall pay the City an annual license fee for the consideration of service.

(2)    The annual license fee for 1996 shall be $52 per residential equivalent connection (REC) and shall escalate by 4% per year. The District shall report to the City by January 31 of each license year period the number of customers and corresponding residential equivalent connections, which shall be based at the election of the District on the actual metered from non-residential customers.

(3)    The license fees shall be due and payable to the City by March 31 of the calendar year for which the license fee applies. Any payment that is not made shall be subject to the same interest and penalties the City may impose against City residents.

The license fee provisions in the amended agreements applicable to Lac La Belle and Ixonia Utility District #2 specify a rate of $58.49 per residential equivalent connection and contain the same four percent annual escalator as the Mary Lane agreement.

¶5    Consistent with the City's agreement with Mary Lane Sanitary Area District,[2] the amended agreement between the City and Ixonia Utility District #2 provides that the City has agreed to accept and treat wastewater originating in the district "without requiring annexation to the City" "notwithstanding a long standing policy of requiring annexation before extending sewer service." The amended agreement with the Village of Lac La Belle does not include language referring to

---

[2] The Town of Oconomowoc is a party to the agreement between the City and the Mary Lane Area Sanitary District but is not a party to this action.

4

annexation by the City (because it may not annex land belonging to a village) but notes that the City "is not obligated to provide wastewater treatment to the Village."

¶6      The City deposits the license fees in its General Fund Cash account and uses them to pay general expenses. From 2015 through 2021, the City collected approximately $190,000 in license fees from Lac La Belle, $420,000 from Ixonia Utility District #2, and $207,000 from the Mary Lane Area Sanitary District.

## II.      Proceedings Before the Public Service Commission

¶7      In October 2020, the municipalities filed a complaint against the City with the Public Service Commission of Wisconsin under WIS. STAT. § 66.0821(5), which gives the commission "exclusive jurisdiction over complaints alleging unreasonable or discriminatory sewer rates." *See Kimberly-Clark Corp. v. PSC*, 110 Wis. 2d 455, 461, 329 N.W.2d 143 (1983) (construing predecessor to § 66.0821(5)). As relevant here, in their complaint, the municipalities alleged that the license fees were unlawful under § 66.0821(4)(a), which prohibits municipalities from establishing any sewerage charge that is not related to providing sewerage service, and that the license fees were "unreasonable rates because [they] are not related to the cost of providing sewerage service."

¶8      After briefing by the parties, the commission determined that it lacked jurisdiction over the complaint because its jurisdiction under WIS. STAT. § 66.0821(5) is limited to whether sewerage "rates, rules, and practices" are unreasonable, and the license fees were not sewerage service charges, i.e., not rates, rules, or practices, under § 66.0821(4)(a).

¶9      The commission set forth a comprehensive analysis in a twenty-three page decision to support its conclusion. In regards to the license fee, the commission

5

noted that both of the amended agreements "include sewage treatment rates as well as capital cost recovery rates related to [the City]'s costs of providing sewerage services" that are separate from the license fees. The commission reasoned that the existence of a separate section in the agreements outlining wastewater treatment services charges undercut the claim that the license fee should be considered a service charge. Thus, the commission deemed the "core issue[]" between the parties to be whether the City could charge a payment for agreeing to provide extraterritorial sewerage service and also charge separate rates for the costs of sewerage service itself. The commission noted that the City was not required to provide extraterritorial sewerage service to the municipalities and retained discretion over whether, and under what conditions, it would do so. The commission stated that municipalities negotiating intergovernmental agreements pursuant to WIS. STAT. § 66.0301(2) are free to negotiate over consideration for a contract and that "[t]here does not appear to be any prohibition under Wisconsin law for a municipality negotiating a fee for the consideration of providing a service[.]"[3] Thus, because there was no "persuasive indication" that the license fee was a sewerage service charge (i.e., a rate, rule, or practice), the commission lacked jurisdiction and dismissed the municipalities' complaint.

---

[3] The commission also noted that the agreements explicitly stated that the municipalities "expressed a willingness to enter into a contract for wastewater treatment pursuant to [WIS. STAT. § 66.0301]" and that the parties to the agreements "admitted that these were freely negotiated contracts and did not dispute any of the wording in the Agreements." The commission stated that the agreements made clear that they were negotiated so the municipalities "could obtain otherwise unavailable wastewater treatment service," and "[p]resumably, [the municipalities] freely negotiated with [the City] regarding the fees present in the Agreements and found them to be cost-effective solutions to their need for wastewater treatment service."

### III. Circuit Court Proceedings

¶10 Following the commission's decision, the municipalities commenced this action against the City.[4] In an amended complaint filed in March 2022, the municipalities challenged the license fees on three grounds. First, they alleged that "[t]he [l]icense [f]ees are sewerage service charges within the meaning of WIS. STAT. § 66.0821(4)" and are invalid under that statute because they "are not related to the cost of providing sewerage service." Next, the municipalities alleged that the fees violate WIS. STAT. § 66.0628 because they do not "bear[] [a] reasonable relationship to the service for which [they are] imposed." Finally, the municipalities alleged that, if the fees are not "sewerage service charges" under § 66.0821(4) and are not fees governed by § 66.0628, they are invalid because the City lacks any other source of legal authority for them.

¶11 After the City filed its answer, the parties filed cross-motions for summary judgment. In a written order dated August 16, 2022, the circuit court granted the City's motion and denied the municipalities' motion. As to the merits of the municipalities' claims, the court began its analysis by stating that, "[w]ithout a timely appeal of the PSC decision, the PSC's determination that it had no jurisdiction over [the] License Fees in question due to the License Fees not being a rate, rule, or practice stands."

---

[4] The municipalities initially named the commission and asserted a claim for review of its decision under WIS. STAT. ch. 227. However, after the municipalities failed to timely serve the commission, the parties agreed to dismiss the commission with prejudice. The City then moved for summary judgment arguing that the commission's decision that the license fee was not a sewerage service charge under WIS. STAT. § 66.0821(4)(a) was dispositive under claim preclusion. In response, the municipalities amended their complaint to raise additional claims addressed in this opinion. The City has not reasserted claim preclusion or raised a jurisdictional challenge based on the commission's decision, and thus we deem those arguments abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶12   The circuit court then turned to the broad powers possessed by municipalities under Wisconsin law.  Specifically, the court cited WIS. STAT. § 62.11(5), which it described as "confer[ring] broad authority upon cities," and concluded that the parties "clearly" were empowered to enter into their respective agreements and that the City could lawfully negotiate for compensation in exchange for its agreement to extend its wastewater treatment service beyond its borders:

> Oconomowoc and the [municipalities] can clearly contract under [WIS. STAT.] §§ 62.04 and 62.11(5) and part of the contract negotiated provides consideration be paid in exchange for [the City's] agreement to provide extraterritorial wastewater treatment services to [the municipalities].  Oconomowoc was not required to provide wastewater treatment services to any of the [municipalities], but Oconomowoc agreed to provide this service under the terms set forth in their agreements.  Oconomowoc had the right to negotiate for contractual consideration in exchange for its agreement to provide wastewater treatment service to entities located outside of its municipal borders.

The court then noted that the "amended complaint does not allege any issues with the creation of the contract itself."  The court concluded that the "License Fees are a valid portion of the contract within the authority of Oconomowoc to negotiate" and that each municipality had "voluntarily consented" to pay them.

## DISCUSSION

### I.   Standard of Review

¶13   "We independently review a grant of summary judgment, using the same methodology as the circuit court."  ***Habel v. Estate of Capelli***, 2020 WI App 15, ¶7, 391 Wis. 2d 399, 941 N.W.2d 858.  Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶14 The parties' arguments on appeal require us to examine and interpret several Wisconsin statutes as well as the terms of their agreements. "The interpretation and application of statutes are questions of law that we decide independently of" the circuit court. *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶15, 326 Wis. 2d 586, 786 N.W.2d 759. Similarly, the interpretation of a written contract raises a question of law that we review de novo. *Id.*

## II. WIS. STAT. § 66.0821(4)(a)

¶15 The municipalities' first claim arises under WIS. STAT. § 66.0821(4)(a), which permits a municipality to

> establish sewerage service charges in an amount to meet all or part of the requirements for the construction, reconstruction, improvement, extension, operation, maintenance, repair, and depreciation of the sewerage system, and for the payment of all or part of the principal and interest of any indebtedness incurred for those purposes, including the replacement of funds advanced by or paid from the general fund of the municipality.

*Id.*[5] The statute allows municipalities to set "sewerage service charges" but prohibits them from "establish[ing] any charge under this paragraph that is not related to providing sewerage service." *Id.*

---

[5] No party develops an argument in support of the circuit court's statement that the decision of the commission that the license fee was not a sewerage service charge under WIS. STAT. § 66.0821(4)(a) "stands." Given our agreement, after de novo review, with the commission's statutory interpretation upon which its jurisdictional decision was based, we need not address any preclusive effect of the commission's decision.

¶16    The municipalities argue that the license fees constitute "sewerage service charges" because the amended agreements with the City state that the fees are charged in consideration of the City providing sewerage services. And, they argue that the fees are unlawful under WIS. STAT. § 66.0821(4) because they are not "related to" the actual costs incurred by the City to provide the service to the municipalities. In support, they rely on this court's decision in *Fred Rueping Leather Co. v. City of Fond du Lac*, 99 Wis. 2d 1, 298 N.W.2d 227 (Ct. App. 1980), in which we held that an amendment to a municipal ordinance that added an "in lieu of tax charge" to a formula for charging customers for sewerage treatment services was not allowed under the predecessor to § 66.0821(4)(a).

¶17    The City offers several responses. First, it contends that it did not "establish" the license fees for the purpose of WIS. STAT. § 66.0821(4)(a) because the fees were not unilaterally imposed by the City, but instead were part of negotiated agreements. We are not persuaded by this argument. The word "establish" is not defined in the statute, but its plain and ordinary meaning is broad enough to include charges instituted by agreement. *See, e.g., Establish*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993) ("to settle or fix after consideration or by enactment or agreement"); *Lemmer v. Schunk*, 2008 WI App 157, ¶10, 314 Wis. 2d 483, 760 N.W.2d 446 ("We may use a dictionary to establish the common meaning of a word.").

¶18    The City also denies that the license fees are "sewerage service charges" and describes them instead as "contractual consideration" for the City's "agreement to provide [the municipalities] access to Oconomowoc's wastewater treatment services when [it] had no obligation to do so." The City justifies the fees as reasonable compensation for extending wastewater treatment service beyond its

borders because, in doing so, the City "loses an otherwise competitive edge over outlying areas that rely on [its] services and amenities."

¶19    In construing the amended agreements, our goal is "to give effect to the parties' intentions." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. "[T]he best indication of the parties' intent is the language of the contract itself," which "[w]e construe … according to its plain or ordinary meaning." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. We also "consider the language of the contract as a whole, and analyze contract clauses in context, as they are reasonably understood." *Ryan v. Ryan*, 2023 WI App 21, ¶12, 407 Wis. 2d 615, 990 N.W.2d 777 (citation omitted).

¶20    We begin by noting that the amended agreements, in sections entitled "SEWAGE TREATMENT RATES," require the municipalities to pay three charges to the City separate and apart from the license fees. First, the municipalities must pay the City a charge for sewage treatment that is calculated by applying an "adjusted sewer user charge rate" to "the total wastewater flow" measured from the municipality each month. With minor differences in wording that are not material here, the amended agreements describe this rate as "[f]or the acceptance, treatment and disposal of sewage transmitted to the City from the [municipality] and for the operation and maintenance, including DNR mandated replacement fund expenses, for the treatment facility and interceptor system." The formula for determining the rate excludes costs to operate and maintain the City's own sewerage collection system but includes costs to operate, maintain, and replace those portions of the City's sewerage system that "provide sewerage service to more than one community."

¶21    The second charge identified in the amended agreements is a "capital cost recovery rate," which is "[f]or the recovery of capital costs associated with the City's treatment plant and interceptors." The agreements state that this charge "represents the [municipality]'s equitable and proportionate share of depreciation and rate of return on the City's treatment facility and interceptors."

¶22    Finally, the amended agreements allow the City to bill the municipalities for certain "non-capital expenses for incidental maintenance and supplies incurred directly" in providing service to them. The agreements specify that the City will bill each municipality for the sewerage treatment charge, capital costs, and noncapital expenses on a monthly basis.

¶23    The amended agreements treat the license fees differently from these charges in three important respects. First, the amount of the license fees is not determined with reference to any actual, estimated, or projected costs or expenses for "the construction, reconstruction, improvement, extension, operation, maintenance, repair, and depreciation of the sewerage system." *See* WIS. STAT. § 66.0821(4)(a). Instead, the fees are determined by multiplying a fixed dollar amount by the number of "residential equivalent connection[s]" in the municipality in a specified year and then increasing that amount by four percent in each subsequent year. Second, and relatedly, the purpose of the fees appears unrelated to constructing, operating, maintaining, or improving the City's sewerage system. Instead, the amended agreements impose the fee obligation "[i]n recognition of" each municipality's "receipt of sanitary sewerage service" from the City and "for the consideration of" that service. Third, the fees are to be paid by March 31 of each year, rather than monthly. Additionally, the City admitted in discovery that it does not use the fees to meet the costs and expenses associated with its sewerage treatment facilities, but instead for payment of general expenses.

12

¶24 Returning to the statutory language, WIS. STAT. § 66.0821(4)(a) enables a municipality to establish "sewerage service charges" to meet certain costs associated with its sewerage system. As we recognized in ***Fred Rueping***, these charges may be assessed "for essentially two purposes: (1) to recover expenses for construction, reconstruction, improvement, extension, operation, maintenance, repair and depreciation of the sewerage facility, and (2) to meet debt obligations incurred because of operational expenses of the system." ***Fred Rueping***, 99 Wis. 2d at 4. But the mere fact that municipalities are statutorily empowered to establish these charges does not mean that any amount paid to a municipality by a user of the system in connection with sewerage treatment service necessarily constitutes a "sewerage service charge[]" that must be tied to the municipality's costs to construct, operate, maintain, and repair the system. Nor do we see any language in the statute that expressly or by inference precludes a municipality from receiving compensation connected to its provision of sewage treatment services in addition to sewerage service charges.

¶25 Construing the amended agreements as a whole, and the provisions discussed above in context and as they would reasonably be understood, we agree with the City that the license fees do not constitute "sewerage service charges" under WIS. STAT. § 66.0821(4)(a) and that the statute does not preclude the City from collecting the fees. The language used by the parties to describe the license fees indicates that they are not intended to meet the costs incurred by the City to maintain and operate its treatment system, but instead are consideration for the City's agreement to extend sewerage treatment services to customers located outside the City's borders.

¶26 It is undisputed that two, if not three, of the monthly charges described in the sections entitled "SEWAGE TREATMENT RATES" are "sewerage service

13

charges." Those charges are expressly linked to the City's "acceptance, treatment and disposal of sewage transmitted … from the [municipalities]" as well as the City's "operation and maintenance," capital costs, depreciation, and other expenses associated with providing service to the municipalities. Construing the monthly charges as "sewerage service charges" and the annual license fees as separate consideration for the City's agreement to extend its service to the municipalities in the first place harmonizes these provisions, gives each an independent effect consistent with its terms, and results in a reasonable interpretation of the agreements. *See Greiling v. Genz*, 264 Wis. 146, 154, 59 N.W.2d 241 (1953) (recognizing the "cardinal principle of [contract] construction that the entire agreement must be viewed as a whole in construing the intent of the parties, and that all provisions should, if possible, be so interpreted as to harmonize with each other").

¶27 Our decision in *Fred Rueping* does not compel a contrary conclusion. In that case, the city of Fond du Lac inserted an "in lieu of tax charge" into a formula used to charge customers for sewerage treatment services that was based on the gross book value of fixed assets multiplied by the value of the local and school tax rate. *Fred Rueping*, 99 Wis. 2d at 2-3. We concluded that the charge was not permitted under the predecessor to WIS. STAT. § 66.0821(4)(a) because it did not reflect the recoverable costs of the sewerage treatment services and thus was not an allowable method of sewerage treatment cost recovery. *Fred Rueping*, 99 Wis. 2d at 5. *Fred Rueping* did not address the issue here—whether a charge is a sewerage service charge in the first instance. The license fees at issue here do not factor into the calculation of the charges owed by the municipalities for sewerage treatment service. Thus, they need not be tied to the costs that "sewerage service charges" are required to meet under § 66.0821(4)(a).

### III. WIS. STAT. § 66.0628

¶28 The municipalities next argue that even if the license fees are not "sewerage service charges" under WIS. STAT. § 66.0821(4)(a), they are subject to WIS. STAT. § 66.0628(2), which states that "[a]ny fee that is imposed by a political subdivision shall bear a reasonable relationship to the service for which the fee is imposed."[6] A fee bears a reasonable relationship to a service under this statute if "the cost charged by a political subdivision for a service provided to a person [does] not exceed the political subdivision's reasonable direct costs that are associated with any activity undertaken by the political subdivision that is related to the fee." Sec. 66.0628(1)(b).

¶29 The parties' arguments concerning WIS. STAT. § 66.0628(2) are similar to those they advance under WIS. STAT. § 66.0821(4)(a). The municipalities contend that the fees do not bear a "reasonable relationship" to the sewerage treatment services provided by the City because they are not related to the cost of those services. The City disagrees, arguing that the license fees were not "imposed" unilaterally by the City, but instead were negotiated by the parties, and that § 66.0628(2) does not prohibit the City from negotiating for fees other than those that fall within the statute. In reply, Lac La Belle argues that it presented evidence from its former president, George Stumpf, that the fee was "imposed" by the City because Lac La Belle had no option other than to enter into a sewerage treatment agreement with the City and the City insisted that the license fee be included in the agreement.

---

[6] The City is a "[p]olitical subdivision" for the purpose of the statute. *See* WIS. STAT. § 66.0628(1)(a).

¶30    Before addressing the parties' arguments, we note that WIS. STAT. § 66.0628(4)(a) provides that

> [a]ny person aggrieved by a fee imposed by a political subdivision because the person does not believe that the fee bears a reasonable relationship to the service for which the fee is imposed may appeal the reasonableness of the fee to the tax appeals commission by filing a petition with the commission within 90 days after the fee is due and payable.

No party argues that this provision requires aggrieved persons to bring their claims to the tax appeals commission first. Thus, consistent with a recent decision from this court, "we leave that question unaddressed and assume the statute still allows for a separate right of action in the circuit court." *See Garfield Baptist Church v. City of Pewaukee*, No. 2018AP673, unpublished slip op. ¶18 (WI App July 24, 2019).[7]

¶31    We agree with the City that the license fees do not violate WIS. STAT. § 66.0628(2) for two reasons. The first turns on the statutory requirement that the fee be "imposed by a political subdivision." *Id.* Cases arising under the statute provide examples of such fees. In *Edgerton Contractors, Inc. v. City of Wauwatosa*, 2010 WI App 45, ¶¶16-25, 324 Wis. 2d 256, 781 N.W.2d 228, for example, we considered the reasonableness of an erosion control inspection fee contained in Wauwatosa's Consolidated Fee Schedule, which the city adopted by resolution. Similarly, in *Rusk v. City of Milwaukee*, 2007 WI App 7, ¶20, 298 Wis. 2d 407, 727 N.W.2d 358 (2006), we held that building reinspection fees contained in the Milwaukee Code of Ordinances were reasonable under the statute. In those cases, the cities "imposed" the fees unilaterally through legislative

---

[7] Though unpublished, this court's opinion in *Garfield Baptist Church v. City of Pewaukee*, No. 2018AP673, unpublished slip op. (WI App July 24, 2019), may be cited under WIS. STAT. RULE 809.23(3)(b).

16

enactments; persons seeking the services for which the fees were associated were not afforded an opportunity to consent to the fees. *Edgerton Contractors*, 324 Wis. 2d 256, ¶3; *Rusk*, 298 Wis. 2d 407, ¶2. In contrast, the license fees at issue in this case were included in agreements the City negotiated with the municipalities.

¶32 Lac La Belle argues that the fee was "imposed" on it because it had no other option for wastewater treatment service and the City insisted that the fees be part of the agreement. Lac La Belle relies on an affidavit from Stumpf as support for this argument, but the affidavit does not show as a matter of law that the City "imposed" the fee or create a genuine issue of material fact on that issue. In the affidavit, Stumpf stated merely that DNR *asked* that Lac La Belle send its wastewater to the City and that Stumpf *believed* that Lac La Belle lacked any other option for wastewater treatment:

> The grant money provided by the DNR to the Village for the sewer line in the late 1980's was provided with the *request* from the DNR that the Village use the City's wastewater treatment facility instead of constructing its own facility. It was *my belief* that the Village had no choice but to enter into an agreement with the City for treatment of its wastewater given the DNR's directive.

(Emphases added.) A request that Lac La Belle send its wastewater to the City and Stumpf's subjective belief that Lac La Belle lacked any other alternative do not establish that the City "imposed" the license fee.

¶33 The second reason why the license fees do not violate WIS. STAT. § 66.0628(2) is that the fees are not charged for sewerage treatment services. As discussed above, the amended agreements assess a monthly charge for sewerage treatment services that is distinct from the license fees. The license fees are separate consideration for the City's agreement to extend its wastewater treatment service beyond its borders. In this respect, the parties' description of this consideration as

a fee is somewhat misleading because it is not imposed in exchange for a service or to regulate or supervise an activity. *See Edgerton Contractors*, 324 Wis. 2d 256, ¶16 ("When municipalities elect to impose fees for regulation purposes … the fees must be designed to cover the cost of regulation and must be reasonable."); *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 501, 536 N.W.2d 175 (Ct. App. 1995) (stating that the "labels which parties use in their agreements are not always controlling").

## IV.    Other Arguments

¶34    The municipalities advance several other arguments as to why the license fees are invalid, but none is persuasive. First, they argue that even if the fees are not unlawful under WIS. STAT. §§ 66.0628 and 66.0821, there is no legal authority that permits the City to assess them. The circuit court cited two statutes, WIS. STAT. §§ 62.11(5) and 62.04, as providing broad authority to the City to negotiate for the license fees. We agree with the circuit court's conclusion.

¶35    WISCONSIN STAT. § 66.0301(2) specifically authorizes "any municipality [to] contract with other municipalities … for the receipt or furnishing of services." Mary Lane and Ixonia acknowledge this statute but point out that § 66.0301(2) provides that a municipality may only "act under the contract to the extent of its lawful powers and duties" and argue that it does not give the City "substantive authority" to collect the license fees. Even if some additional authority were required, WIS. STAT. §§ 62.04 and 62.11(5) authorize the City to agree to extend its wastewater treatment service to the municipalities in exchange for the license fees.

¶36    WISCONSIN STAT. § 62.11(5), which addresses the powers held by the common council of a city, states as follows:

> Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

WISCONSIN STAT. § 62.04 directs us to construe the authority conferred in § 62.11(5) broadly:

> For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that [WIS. STAT. §§] 62.01 to 62.26 shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof.

As we have previously recognized, these statutes confer upon cities "all powers not denied them by other statutes or the constitution." *Metropolitan Milwaukee Ass'n of Com., Inc. v. City of Milwaukee*, 2011 WI App 45, ¶81, 332 Wis. 2d 459, 798 N.W.2d 287. Together, they confer wide-ranging authority on a city's governing body to manage and control the city's property and to act for the city's "commercial benefit" and the wellbeing of its residents through "license, regulation, … and other necessary or convenient means." Sec. 62.11(5). Here, the City decided to make certain of its property available to the municipalities for wastewater treatment service on the terms and conditions it negotiated in the amended agreements. Section 62.11(5) unquestionably conferred authority upon the City to do so.

19

¶37    The municipalities disagree, citing WIS. STAT. §§ 66.0628 and 66.0821(4)(a) as express limitations on the City's authority with respect to sewerage treatment charges.  They also argue that §§ 66.0628 and 66.0821(4)(a) are the more recent and specific—and therefore controlling—statutes applicable in this case.  *See Kramer v. City of Hayward*, 57 Wis. 2d 302, 311, 203 Wis. 2d 871 (1973) (citing "the rule that the specific statute controls when a specific statute and general statute relate to the same subject matter"); *Nicolet Mins. Co. v. Town of Nashville*, 2002 WI App 50, ¶17, 250 Wis. 2d 831, 641 N.W.2d 497 (stating that "a more recent statute controls and exists as an exception to a general statute covering the same subject matter" (citation omitted)).

¶38    The municipalities' arguments fail because, as we have explained, neither WIS. STAT. § 66.0628 nor WIS. STAT. § 66.0821(4)(a) apply to the license fees.  Those statutes are neither more recent nor more specific on the subject of the license fees and thus do not control over, or provide an exception to, the broad authority conferred by WIS. STAT. § 62.11(5).[8]

¶39    Finally, Lac La Belle argues that the license fee was not "freely bargained" because DNR "instructed" it to contract with the City for wastewater treatment services.  Lac La Belle points to the Stumpf affidavit for support, but as we explained above, Stumpf stated only that DNR "request[ed]" that Lac La Belle use the City's wastewater treatment facility and that he believed it lacked other viable options for this service.  These statements are simply not sufficient to

---

[8] For the same reason, we reject Lac La Belle's argument that the license fee provisions are ultra vires.

20

establish that Lac La Belle did not freely and voluntarily consent to the license fee provision in its contract.[9]

¶40　Lac La Belle also argues that contracts for the provision of critical public services like sewerage treatment should not generally be thought of as freely bargained because "the public necessity of such services dictates each municipality cannot simply press its leverage and demand the maximum 'the market will bear.'" Because municipalities must arrange for sewerage treatment, this argument goes, they face "an inherent imbalance in negotiating power" that warrants, as a matter of public policy, the invalidation of any contract provisions that are unreasonable.

¶41　We reject this argument for two reasons.  First, the only source of public policy identified by Lac La Belle are the two statutes we have concluded do not apply to the license fees, WIS. STAT. §§ 66.0628 and 66.0821.  Lac La Belle points to no other statute, regulation, or judicial opinion as support for a public policy restricting the permissible terms of contracts for critical public services to those that are reasonable.

¶42　Moreover, Lac La Belle directs us to no rules, standards, or guidelines by which we might assess the reasonableness of the license fees.  As the City notes, our supreme court previously concluded that several statutes pertaining to annexation of unincorporated areas by a city and the extension of sewerage service to those areas reflect a legislative judgment that annexation is "a reasonable quid pro quo that a city could require before extending sewer services to the area."

---

[9] We note that neither Lac La Belle nor any of the other municipalities sought to invalidate the license fee provisions in the contracts on the grounds that they were involuntary, unconscionable, or lacking in consideration.  Their sole request is based on public policy grounds, which is better addressed to the legislature and governor, particularly given the comprehensive statutory scheme we have addressed.

21

*See* **Town of Hallie v. City of Chippewa Falls**, 105 Wis. 2d 533, 540-41, 314 N.W.2d 321 (1982). If a city may reasonably insist on annexing unincorporated territory before providing sewerage treatment service to it, why could it not instead condition the extension of such service beyond its borders, which arguably puts it in a less competitive position vis-à-vis economic growth and development, on the payment of compensation like the license fees at issue here? Why would annexation be a reasonable quid pro quo, but not payment of the license fees? Lac La Belle offers no answers to these questions and points us to no legal standards we could use to answer them. Absent such guidance, we decline to impose our own evaluation of the reasonableness of the license fees on the parties' agreements.

## CONCLUSION

¶43 For the reasons stated above, the license fees are not "sewerage service charges" for the purpose of WIS. STAT. § 66.0821(4)(a) and are not subject to WIS. STAT. § 66.0628(2). Nor have the municipalities established that the City lacked the authority to negotiate the license fees into its wastewater treatment services agreements with them. The municipalities may regret agreeing to pay the fees, but they have not carried their burden to show that the circuit court erred in concluding that the fee provisions are valid and enforceable. Accordingly, the circuit court's order granting the City's summary judgment motion is affirmed.

*By the Court.*—Order affirmed.